The plaintiff alleges that he is the purchaser of the equitable interest of one J. B. Standridge in the lands described in the pleadings; that Standridge had purchased the same from John M. Martin, who had paid the purchase money to the state, and had assigned to the said Standridge the certificate of purchase and valuation, which he had obtained for said land; that the defendant, William P. Martin, well knowing these facts, purchased the said land from John M. Martin, and obtained a grant from the state. The plaintiff prayed:
1. That William P. Martin, might be declared a trustee for him, and that a decree be made requiring him to convey to the plaintiff such estate or title, as he, the defendant, has in the premises above described.
2. For the possession of the land.
3. For damages for withholding the possession.
The defendant admits in his answer that the purchase *Page 392 
money had been paid by J. M. Martin to the state, and that the certificate of purchase and valuation had been assigned by J. M. Martin to J. B. Standridge, but contended that said assignment had been made conditionally; that about the time of the assignment and transfer by Martin to Standridge, the said Standridge became security of the said J. M. Martin, on a certain note or bond, payable to one Rogers, and it was to secure him, the said Standridge, from any probable loss or damage, by reason of his becoming surety as aforesaid; that the said certificate was transferred, and he alleges that the transfer of said certificate was not absolute, but made as security aforesaid; that sometime thereafter, suit was brought on the Roger's note, and Martin being unable to pay, Standridge was compelled to pay the same; that soon after this, Standridge entered into and took possession of one of the tracts of land transferred as aforesaid to J. B. Standridge, and for the purpose aforesaid, but not the tract in controversy, and has held the possession ever since; and that the tract now sued for was permitted to remain in the possession of J. M. Martin, up to the time he sold to the defendant; that he consulted the defendant about the purchase of this lot designated in the certificate of valuation as lot no. 101, and he told him he set up no claim to this tract, and if he wanted to purchase it to do so, and upon this he did purchase from his father, and upon his stating to the proper authorities that he was the person entitled thereto, obtained a grant from the state. He alleged in his answer, that the pretended purchase by defendant from Standridge was with full knowledge of all these facts, and that the purchase was not made in good faith, but for the purpose of annoying and harassing him, and that the plaintiff has never purchased the certificate from Standridge, but has only agreed to pay him a very small amount, wholly disproportionate to the real value, in the event, and upon the condition that he should recover against the defendant in *Page 393 
this action. He further alleged, that he had fully perfected his title to the land, by the means aforesaid, before the plaintiff made his pretended purchase, and that he was then in the open, notorious, and adverse possession of the land, of which the plaintiff had full notice. The plaintiff filed a replication, in which he denied all the allegations of the answer, and it does not appear from the record that there was any proof offered to sustain them. The following issues were submitted to the jury:
1. Was the sale from John M. Martin to J. B. Standridge an absolute sale, or was it in trust to secure the Roger's debt? Ans. Absolute sale.
2. If it was on trust, did John G. Chasteen purchase the land from J. B. Standridge for a valuable consideration, and without notice of the trust?
3. Did the defendant, W. P. Martin, at the time he took his grant, have notice that John M. Martin had assigned his interest to Standridge? Ans. Yes, by consent.
4. Did John G. Chasteen, the plaintiff, have notice that the defendant had a grant for the land, at the time he purchased from J. B. Standridge? Ans. Yes, by consent.
Upon this finding of the jury, the following judgment was rendered, to-wit: "This cause coming on to be heard, upon the pleadings and issues submitted to and found by the jury, and it appearing to the court now here, that John M. Martin sold to J. B. Standridge a tract of land known and described in the pleadings as tract No. 101, in 3d district of Cherokee lands, and transferred to J. B. Standridge the certificate of purchase therefor, and at the time of the said sale, the said J. M. Martin had paid the purchase money to the state of North Carolina; and it further appearing that the said J. B. Standridge sold the said tract of land to the plaintiff John G. Chasteen, and transferred to him the said certificate of purchase, and it further appearing that after the sale and transfer by the said J. M. Martin *Page 394 
to the said J. B. Standridge, that the defendant W. P. Martin purchased, with full knowledge of the sale and transfer to the said J. B. Standridge, and afterwards procured a grant to be issued from the state of North Carolina; and it also appearing to the court, that the plaintiff John G. Chasteen, purchased of the said J. B. Standridge, after the said W. P. Martin had procured the grant from the state of North Carolina:
Now, after full argument by counsel, it is considered by the court, that the said W. P. Martin be declared trustee for the plaintiff John G. Chasteen and to him the plaintiff convey the legal title which he holds, and that the said defendant, W. P. Martin, shall surrender and deliver up to the plaintiff the possession thereof.
And it is further ordered, adjudged and decreed, that the defendant convey to the plaintiff by deed of conveyance, all the right, title and interest in said tract of land, No. 101, in 3d district of Cherokee lands described in the pleadings, and containing two hundred and forty acres; beginning on a small hickory on a steep hill side, south east corner of lot No. 101, and runs east one hundred and sixty poles, to a post oak, then north two hundred and forty-five poles, to a black jack on a small mountain, then west one hundred and seventy poles, to a small black oak, on the east side of a small creek, north-east corner of No. 100, thence south to the beginning; and that the defendant shall deliver the possession thereof to the plaintiff; and it is further adjudged and decreed by the court, that the plaintiff have, and recover of the defendant his costs of suit, to be taxed by the clerk."
The defendant excepted, and appealed to this court.
There is a statement of the case sent up with the transcript, signed by the opposing counsel, but it does not disclose the grounds of exception taken by the defendant. The statement of the case, signed by counsel, or the presiding judge, in our practice, is a substitute for "a bill of exceptions, wherein should be set forth the errors complained of. "It is the privilege of an appellant to make up his case, and it is his duty to do it, so as to intelligibly exhibit the error in the judgment of which he complains; and the rules of practice give him all the necessary power to do so. Ordinarily, if he fail to do so, the only course left open to the supreme court is to confirm the judgment below, not because it is thought to be right, but because it cannot be seen to be wrong." Williams v.Council, 65 N.C. 10; Stewart v. Garland, 1 Ired., 470; Fleming v.Halcomb, 4 Ired, 268; Harry v. Graham, 1 Dev. Bat., 76; Honeycutt v.Angel, 4 Dev. Bat., 306; Thomas v. Alexander, 2 Dev. Bat., 385; Statev. Orrell, Busb., 217; Turner v. Foard, 83 N.C. 683.
In the absence of a bill of exceptions, we have looked through the record, and are unable to discover the grounds upon which the defendant's exception was taken, unless it was because the second issue had not been responded to by the jury. That issue was immaterial. How could it be a material matter of inquiry whether he knew of the trust, when it was the trust itself he was buying, which he had the right to do, and which, by the transfer of the equity, gave him the same right to call for the conveyance of the legal estate that Standridge had, and it made no difference whether he paid a valuable consideration for it or not. "For no consideration is necessary in the transfer of an equity, but only necessary to raise an equity, and when once raised, to be transferred like all other rights, upon legal evidence of the will of the owner to make the transfer." Patton v.Clendenin, 3 Murphy, 68. *Page 396 
There is no error; the judgment of the court below must be affirmed.
No error. Affirmed.